IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| DAVID ALFREDSON, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. _____ |
| v. ) | JURY DEMAND |
| ) | |
| JOHN HANCOCK LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

_____

## COMPLAINT
_____

Plaintiff, David Alfredson, M.D. ("Plaintiff" or "Dr. Alfredson"), for his claims and causes of action against the Defendant, John Hancock Life Insurance Company ("Defendant" or "John Hancock"), by and through counsel, states as follows:

### PARTIES

1. Plaintiff is, and was at all times relevant to the events referred to herein, a citizen and resident of this District.

2. Defendant is a life insurance and annuities corporation. Defendant is a foreign corporation with its principal place of business located in Boston, Massachusetts.

### JURISDICTION AND VENUE

3. Jurisdiction and venue in this Court are appropriate pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and is between citizens of different states.

4.  Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (2).

5.  This Court has personal jurisdiction over the Defendant because, *inter alia*, Defendant knowingly did business with, and entered into a contract for a life insurance policy with Plaintiff, a Tennessee resident. Further, Defendant regularly conducts and solicits business in Tennessee.

## FACTUAL ALLEGATIONS

### Dr. Alfredson Purchases Policy from John Hancock

6.  Plaintiff Dr. Alfredson is a radiologist who has practiced medicine for 40 years.

7.  On May 16, 2005, Plaintiff completed a life insurance policy application for life insurance to insure the life of his business partner and colleague, Dr. Veena Anand. Defendant John Hancock accepted the application and Plaintiff was named as an owner and beneficiary of a John Hancock term life policy, policy number 81 065 682 (the "Policy"). (A copy of the Policy is attached as "Exhibit A.")

8.  The Policy insured the life of Dr. Anand. Under the terms of the Policy, Plaintiff was to receive a death benefit if Dr. Anand died while the Policy was in force. The amount of the Policy benefit was $1,500,000.00.

9.  The issue date of the Policy was July 18, 2005. The Policy stated that Plaintiff was to pay a level annual premium of $5,350.00 over a ten-year period starting from the issue date through July 17, 2015 ("Coverage Guarantee Date"). Under the Policy's level premium provision, the premium for the policy benefit of $1,500,000 was guaranteed by John Hancock to remain the same for ten years. Therefore, the premium could only be changed if the face amount of the Policy changed.

10. Plaintiff did not enter into any agreements that altered the issue date of the Policy or the Coverage Guarantee Date.

11. Under the terms of the Policy, Plaintiff was allowed a 31-day-grace period in which the Policy remained in place as long as the premium was not more than 31-days late. The Policy also required that Defendant pay a death benefit if the death of the life insured occurred during a grace period.

***John Hancock Prematurely Raises Dr. Alfredson's Premiums in Violation of the Policy***

12. Plaintiff paid the $5,350.00 premium each year as required under the terms of the Policy through April 19, 2013. Plaintiff then requested a reduction in the amount of the Policy benefit to $500,000. After receiving Plaintiff's request, Defendant reduced the Policy amount, and using the guaranteed ten-year level set premium in the Policy, Defendant recalculated Plaintiff's premium. Based on this recalculation, Defendant lowered Plaintiff's annual premiums to $2,050.00.

13. Plaintiff timely paid his new annual premiums in the correct amount in 2013 and 2014.

14. On January 5, 2015, Defendant sent Plaintiff a letter ("Letter") notifying him that his "Premium contract" was approaching its 10-year-anniversary and, as a result, his level premium was recalculated to an annual amount of $22,080. (A copy of the Letter is attached as Exhibit B.) This new annual premium amount was more than ten times higher than the annual premium amount Plaintiff was guaranteed under the Policy.

15. In addition to sending the Letter, Defendant sent Plaintiff a premium notice incorrectly stating that his higher premium payment was due on March 22, 2015. In fact,

Plaintiff was guaranteed a level set premium through the Coverage Guarantee Date of July 17, 2015. Defendant had no contractual right to increase unilaterally Plaintiff's premium until the Coverage Guarantee Date.

16. Plaintiff entered into the Policy with Defendant nearly ten years before he received the Letter. As a result, Plaintiff relied on Defendant, a company with an over 150-year history and one of the largest insurance companies in the United States, to inform him of the date when his ten-year-guarantee period was set to lapse. When Plaintiff received Defendant's notice that his premium was set to increase, he accordingly believed that his ten-year guaranteed premium rate was set to expire on or around March 22, 2015, as stated by Defendant.

17. Relying on Defendant's incorrect information regarding when his ten-year level premium period was set to lapse, Plaintiff decided not to keep the Policy in force at the new premium rate. Plaintiff's Policy was cancelled on or around May 22, 2015.

18. On July 19, 2015, Dr. Anand passed away. Dr. Anand's death occurred two days after Plaintiff's ten-year guaranteed annual premium ended. Dr. Anand's death occurred within the grace period as expressly defined in the Policy.

19. Even though Defendant cancelled the Policy on or around May 22, 2015, Plaintiff had a surplus in his account that would have covered any amount owed from March 22, 2015 through August 3, 2015. As a result, Defendant should not have cancelled the Policy and Plaintiff should have been paid for death benefits after the death of Dr Anand.

20. Even if Plaintiff did not have a surplus covering any amount owed, Defendant raised his premiums prematurely causing him to cancel the Policy before his guaranteed level

period premium was scheduled to end. But not for Defendant's misrepresentation, Plaintiff would have continued paying the premium rate guaranteed to him under the Policy, as he had previously done over a ten-year-period in accordance with the terms of the Policy.

21. On July 11, 2016, Plaintiff, through counsel, submitted a timely claim letter ("Claim Letter") asking for the benefits he was due. (A copy of the Claim Letter is attached as "Exhibit C.") In the Claim Letter, he also issued a formal demand under Tenn. Code Ann. ¶ 56-7-105 that Defendant pay the benefits provided to him under the Policy. Further, in the Claim Letter, Plaintiff, through counsel, provided a detailed explanation and supporting documentation showing that Defendant raised the premiums prematurely in violation of the Policy.

22. Defendant denied the claim and demand. In its response, Defendant stated that the Policy was inactive as of May 21, 2015. It did not address any of the issues raised in the Claim Letter. (A copy of Defendant's response to the Claim Letter is attached as "Exhibit D.")

### CAUSES OF ACTION
### COUNT ONE--BREACH OF CONTRACT

23. Plaintiff incorporates by reference all previous allegations of this Complaint as if the same were fully set forth herein.

24. Plaintiff's life insurance policy with Defendant John Hancock is a contract. Defendant has breached that contract by prematurely raising the guaranteed level premium four months prior to July 17, 2015, the date the parties agreed upon in the contract.

25. Defendant further breached the contract when it failed to pay death benefits upon receiving a timely claim.

26. Defendant additionally breached the contract when it cancelled the Policy prematurely even though Plaintiff had a surplus in his account at the time of the cancellation.

27. As a direct and proximate result of Defendant's breach of contract, Plaintiff has incurred damages. Defendant is liable to Plaintiff pursuant to Tennessee common law.

### COUNT TWO—BAD FAITH FAILURE TO PAY UNDER TENNESSEE CODE ANNOTATED § 56-7-105

28. Plaintiff incorporates by reference all previous allegations of this Complaint as if the same were fully set forth herein.

29. Defendants' failure to pay Plaintiff's claim for benefits under the Policy was in bad faith when, *inter alia*, Defendant prematurely raised the premium by 400% in violation of the express terms of the Policy and failed to pay benefits when notified of its misrepresentation to Plaintiff. Because Defendant failed to remedy its mistake, even after being shown documentation proving that Defendant prematurely raised the Plaintiff's premiums, Plaintiff has needlessly incurred attorney's fees in seeking to collect the amount he is contractually owed under the Policy.

### COUNT THREE—NEGLIGENT AND INTENTIONAL MISREPRESENTATION

30. The Plaintiff incorporates by reference all previous allegations of this Complaint as if the same were fully set forth herein.

31. Defendant made material untrue statements and misrepresentations regarding the terms of the Plaintiff's coverage including, *inter alia,* the date in which Defendant was contractually allowed to raise the premiums under the terms of the Policy. Plaintiff reasonably relied on the untrue statements and misrepresentations of Defendant. Accordingly, Defendant

is liable to Plaintiff pursuant to the Tennessee common law of negligent and intentional misrepresentation.

32. As a direct and proximate result of relying on the untrue statements and misrepresentations of Defendant, Plaintiff has suffered damages.

### *RELIEF REQUESTED*

Plaintiff, by and through counsel, requests the following relief:

1. An award of compensatory damages in an amount to be determined by the jury;

2. An award of all damages permitted by T.C.A. §56-7-105, including an award for attorney's fees and expenses;

3. An award for pre-judgment and post judgment interest;

4. A jury to decide all issues triable by a jury; and

5. All other and further relief which this Court deems just and appropriate.

Respectfully submitted,

/s/ J. Ross Pepper
J. Ross Pepper (BPR #14444)
Matthew E. Pulle (BPR #31271)
PEPPER & BROTHERS, PLLC
201 4th Avenue North, Suite 1550
Nashville, Tennessee 37219
(615) 256-4838
*rpepper@pepperbrotherslaw.com*
*mpulle@pepperbrotherslaw.com*

***ATTORNEYS FOR PLAINTIFF***